

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| KENNETH DEWAYNE MAYES, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | No. 4:18-CV-214-A |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**MEMORANDUM OPINION**
**and**
**ORDER**

This is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by petitioner, Kenneth Dewayne Mayes, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice, against Lorie Davis, director of that division, respondent. After having considered the pleadings, state court records, and relief sought by petitioner, the court has concluded that the petition should be denied.

**I. Factual and Procedural History**

On April 16, 2015, a jury in Parker County, Texas, Case No. CR14-0818, found petitioner guilty of aggravated robbery and assessed his punishment at 65 years' imprisonment and a fine of $10,000. (Clerk's R. 122.) Petitioner appealed, but the Second District Court of Appeals of Texas affirmed the trial court's judgment and the Texas Court of Criminal Appeals refused his

petition for discretionary review. (Mem. Op. 12; Elec. R. 1.) Petitioner also filed two state habeas-corpus applications challenging his conviction. The Texas Court of Criminal Appeals denied the first without written order and dismissed the second as a subsequent application under article 11.07, § 4 of the Texas Code of Criminal Procedure. (SHR-01, Action Taken.[1])

The appellate court summarized the evidence at trial as follows:

> At approximately 1:00 a.m. on September 30, 2014, Sherry Trejo was driving to her home in Weatherford, Texas, on an interstate highway. Trejo noticed a white passenger car stopped on the service road, which was unusual. After Trejo passed by, she noticed that the car began moving to get on the interstate, pulled behind Trejo's car, and followed her off the interstate when Trejo exited. When Trejo parked her car at her apartment complex, the car she had seen on the service road "came behind" her car but drove by. As Trejo was getting some bags out of the front passenger seat, she saw a "clean-cut," black man standing at the front of her car, wearing jeans and a "maroon or burgundy" solid shirt. The man asked to use her phone, and Trejo handed her phone to him. The man then asked where Trejo's purse was. Trejo told the man she did not have a purse and then noticed that the man was holding a short, silver revolver with a black handle. The man grabbed Trejo and put the gun against her back. He took Trejo's credit cards and cash—approximately $37—from her pockets and made her kneel down. Trejo begged the man not to shoot her, to which he replied, "Why would I do that?" The man then ran away. Trejo's granddaughter, who lived with Trejo and whose bedroom faced the parking lot, heard a car door slam around this time. When she looked out the window, she saw a white car—"like a white [Dodge] Charger"—back out and drive off at a fast speed.

---

[1] "SHR-01" refers to the record of petitioner's state habeas proceeding in WR-87,679-01. The resolution of his second state habeas proceeding was obtained from the Texas courts website.

2

Trejo, meanwhile, had fled to her apartment and called the police. Police officers on patrol in the area were alerted that a robbery at gunpoint had occurred and to be on the lookout for a black male driving a white Dodge Charger. Shortly after 1:00 a.m. on September 30, 2014, Officer Willie Johnson of the Hudson Oaks Police Department was on patrol about two miles from where the robbery occurred. He heard the notification about the robbery and saw a white Dodge Avenger leave the parking lot of a convenience store. Johnson followed the car and saw it fail to stop at a stop sign, put its right-turn signal on, stop in the middle of the intersection, and then drive straight through the intersection. Johnson radioed the car's license-plate information to the police department and turned on the roof lights of his marked patrol car to pull the Avenger over for a traffic stop. The car pulled into another convenience store parking lot, slowed down, but then sped off onto the service road to get back on the interstate. Johnson saw that the driver was a black man and that a woman was sitting in the passenger seat.

The Avenger led Johnson and other responding police officers on a high-speed chase on the interstate, reaching speeds of over 120 miles per hour. When the Avenger got off the interstate in Fort Worth and entered a residential area, still at a high speed, the pursuing officers ended the chase for safety reasons. Approximately fifteen minutes after the chase ended, Sergeant Steven Fineman with the Fort Worth Police Department saw a car with the license plate of the car that had evaded Johnson's traffic stop parked in a driveway in the neighborhood where the car was last seen. After determining that the car was not owned by anyone in the house, Fineman found a black man—[petitioner]—and a young woman—Jessica Toombs—hiding in the back yard of the house next door. [Petitioner] was wearing a "multi-colored striped shirt" and jeans. Officers handcuffed both, and discovered a silver revolver, Trejo's credit cards, and Trejo's driver's license in [petitioner]'s pockets. Trejo's iPhone was found in a sock in the back seat of the Dodge Avenger. Later, Trejo identified someone from a photographic line-up with 60% certainty as the man who robbed her, but it was not [petitioner].

A grand jury indicted [petitioner] with aggravated

3

robbery by intentionally or knowingly, while in the course of committing theft of property, threatening or placing Trejo in fear of imminent bodily injury or death and using or exhibiting a deadly weapon. At trial, Toombs testified that on September 29, 2014, at around 10:30 p.m., [petitioner] drove to Dallas and picked her up in a white "Charger or Avenger" so they could "just driv[e] around and smok[e]" synthetic marijuana. Toombs remembered that [petitioner] was wearing a "dark red t-shirt, just a plain t-shirt" that night. Toombs could not remember what shirt she was wearing. Toombs feel [sic] asleep at some point and woke up when [petitioner] pulled into a convenience store and told her to put her seat belt on. Toombs then noticed "more than one cop car" behind [petitioner]'s car. [Petitioner] drove off quickly "trying to get away" from the police. Toombs testified that after [petitioner] got into a residential area and lost the police cars, [petitioner] pulled the car into a driveway and told Toombs to switch shirts with him, which she did. Before putting Toombs's shirt on, [petitioner] "started wiping stuff down in general" inside the car. Toombs stated that the pair then got out of the car, went a few houses down, jumped a fence, and sat on a back porch. When officers began shining flashlights into the back yard, searching for [petitioner], [petitioner] told Toombs to "move [her] feet in." Toombs testified that although she knew [petitioner] was "running" from the police and did not tell him to stop, she denied encouraging him to evade the officers. She also denied seeing a gun, but remembered [petitioner] having an iPhone in a pink case that night.

After the State rested its case against [petitioner], he orally moved for a directed verdict because "even the complaining party has not been able to identify [petitioner]." The trial court denied the motion. After [petitioner] rested and both sides closed, [petitioner] requested that the trial court include in the jury charge an instruction on the lesser-included offense of "theft as a result of receiving stolen property" and an instruction on "the accomplice witness rule" because Toombs was "as a matter of fact . . . an accomplice." The trial court denied both requests.

At the punishment phase of the trial, the State

4

introduced evidence of its enhancement allegation regarding [petitioner]'s 2005 conviction for aggravated assault, and [petitioner] pleaded true to the allegation. The owner of the Dodge Avenger that [petition] drove while evading the police testified that a black man stole her car at gunpoint on September 29, 2014. . . .

(Mem. Op. 2-6 (footnotes omitted).)

## II.  Issues

Petitioner raises two grounds for relief, in which he claims that (1) the evidence is insufficient to support his conviction and (2) the trial court abused its discretion by denying his timely request for an instruction on the lesser included offense of theft. (Pet. 6.)

## III.  Rule 5 Statement

Respondent believes that petitioner has exhausted his state court remedies as to the claims raised as required by 28 U.S.C. § 2254(b)(1) and that his petition was filed in a timely manner. (Resp't's Ans. 6.)

## IV.  Discussion

### *Legal Standard for Granting Habeas Corpus Relief*

A § 2254 habeas petition is governed by the heightened standard of review provided for in the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as

established by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter,* 562 U.S. at 102.

The statute further requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden of rebutting this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Additionally, when the Texas Court of Criminal Appeals, the state's highest criminal court, denies relief on a state habeas-corpus application without written order, typically it is an adjudication on the merits, which is likewise entitled to this presumption. *Richter,* 562 U.S. at 100; *Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). In such a situation, a federal court "should 'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate

deference to that decision. *Wilson v. Sellers,* 138 S. Ct. 1188, 1191-92 (2018). Petitioner raised his grounds for relief on direct appeal and the Texas Court of Criminal Appeals rejected the claims without written order or opinion. Thus, this court will look through to the state appellate court's decision, the last reasoned state-court decision regarding the claims, in addressing petitioner's grounds.

*(1) Sufficiency of the Evidence*

In his first ground, petitioner claims that the evidence is insufficient to support his conviction—specifically, the evidence is insufficient to prove the element of identity. (Pet. 6.) A criminal defendant has a federal due process right to be convicted only upon evidence that is sufficient to prove beyond a reasonable doubt the existence of every element of the offense. *Foy v. Donnelly,* 959 F.2d 1307, 1313 (5th Cir. 1992). Federal courts, nevertheless, have extremely limited habeas review of claims based on the sufficiency of the evidence. When reviewing such claims, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). When faced with a record of historical facts that supports conflicting inferences federal courts must presume—even if it does not affirmatively appear in the

7

record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution. *Id.* at 326. Under *Jackson,* both direct and circumstantial evidence can contribute to the sufficiency of evidence and circumstantial evidence alone may be enough to support the conviction. *Schrader v. Whitley,* 904 F.2d 282, 287 (5th Cir. 1990). Where a state appellate court has conducted a thoughtful review of the evidence, its determination is entitled to great deference. *Callins v. Collins,* 998 F.2d 269, 276 (5th Cir. 1993).

Applying the *Jackson* standard, the appellate court addressed the claim as follows:

> [Petitioner] argues that the evidence was insufficient to support his conviction of aggravated robbery. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
>
> The crux of [petitioner]'s argument is that because Trejo was unable to identify him as the robber and because Toombs was an uncorroborated accomplice, there is no evidence that he robbed Trejo. A conviction may not rest upon the testimony of an accomplice unless that testimony is corroborated by other evidence tending to connect the defendant to the offense. An accomplice is defined as more than a bystander or passive participant:
>
>> An accomplice is someone who participates with the defendant before, during, or after the commission of a crime and acts with the required culpable mental state. To be considered an accomplice witness, the witness's participation with the defendant must have involved some affirmative act that

8

promotes the commission of the offense with
which the defendant is charged. A witness is
not an accomplice witness merely because . .
. she knew of the offense and did not
disclose it, or even if . . . she concealed
it. In addition, the witness's mere presence
at the scene of the crime does not render
that witness an accomplice witness. And
complicity with an accused in the commission
of another offense apart from the charged
offense does not make that witness's
testimony that of an accomplice witness. In
short, if the witness cannot be prosecuted
for the offense with which the defendant is
charged, or a lesser-included offense of that
charge, the witness is not an accomplice
witness as a matter of law.

We conclude that Toombs was not an accomplice such
that her uncorroborated testimony was incompetent to
support [petitioner]'s conviction. Toombs was asleep in
the car during the time Trejo was robbed and did not
wake up until [petitioner]'s car chase with police
began. There was no evidence that Toombs took any act
that promoted the commission of the aggravated robbery.
The only offenses Toombs arguably participated in or
promoted were possession of a controlled substance and
evading detention, neither of which was at issue during
the trial. Toombs was not an accomplice to the
aggravated robbery; thus, her testimony was not
required to be corroborated, and we may consider her
testimony in our review of the sufficiency of the
evidence.

Toombs testified that she knew nothing of the
robbery itself because she was asleep at the time. She
was able to confirm that [petitioner] was driving a car
similar to the car Trejo and her granddaughter saw, was
wearing a shirt similar to the shirt Trejo saw the
robber wearing, and had an iPhone in a pink case that
night. Shortly after the robbery and about two miles
from Trejo's apartment, Johnson saw and attempted to
stop a car similar to the car driven by Trejo's robber.
[Petitioner] refused to pull over and led police
officers on a high-speed chase between two counties.
When officers found [petitioner] and Toombs in a back
yard approximately one hour after the robbery and
fifteen minutes after the chase ended, [petitioner] had

9

> a gun, Trejo's credit cards, and Trejo's driver's
> license in his pockets. Trejo's iPhone was found in the
> car [petitioner] had been driving. The evidence was
> sufficient to support [petitioner]'s aggravated-
> robbery conviction.

(Mem. Op. 6-9 (citations and footnotes omitted).)

Petitioner claims that the state court's determination is an objectively unreasonable application of *Jackson* because the only evidence linking him to the crime is circumstantial and any inferences to be drawn from the evidence as to his identity as the robber are rebutted by the victim's identification of another man as the actual perpetrator. (Pet. 6; Pet'r's Supp. Mem. 4; Oct. 23, 2019 Order.) However, the record contradicts petitioner's assertion. After viewing the photographic lineup, the victim tentatively identified another man as the robber and expressly noted on the witness form that she was "not totally positive, 60% sure," and she reiterated that she was not 100 percent sure at trial. (Reporter's R., vol. 3, 58 & vol. 6, State's Ex. 11.) Furthermore, direct and circumstantial evidence are weighed equally. *United States v. Mendoza*, 226 F.3d 340, 343 (5th Cir. 2000). Drawing all inferences in favor of the prosecution, the circumstantial evidence alone was enough such that a rational trier of fact could have found beyond a reasonable doubt that petitioner committed the charged offense. The state court's determination of the matter appears consistent with *Jackson* and is entitled to the appropriate deference.

Petitioner is not entitled to relief under his first ground.

*(2)* *Trial Court Error*

Under his second ground, petitioner claims that the trial court abused its discretion by denying a timely request for an instruction on the lesser-included offense of theft. (Am. Pet. 6, doc. 13.) Relying solely on state law, the state appellate court addressed the claim as follows:

> [Petitioner] argues that the trial court erred by failing to instruct the jury on the lesser-included offense of theft. He asserts that because he "raised evidence that negated the assaultive element of aggravated robbery" and because Trejo did not identify him as the robber, he was entitled to a lesser-included offense instruction. In determining if the failure to instruct the jury on theft was error, we first consider whether the lesser-included offense is included within the proof legally necessary to establish the charged offense and, if so, we next examine whether there is evidence in the record that would permit a jury to rationally find that if the defendant is guilty, he is guilty only of the lesser-included offense. In determining the second part of this test, we refer to the evidence in the context of the entire record, but we may not consider whether that evidence is credible, controverted, or in conflict with other evidence. But there must be some affirmative evidence from which a rational jury could acquit the appellant of the greater offense while convicting him of the lesser-included offense.
>
> The State concedes that theft was a lesser-included offense of aggravated robbery with a deadly weapon as alleged in the indictment. Therefore, we now consider whether a rational jury, in the context of the entire record viewed in a light favorable to submission of the lesser offense, could have found [petitioner] guilty only of theft. Here, [petitioner] contends that he was entitled to the instruction because he raised evidence negating the "assaultive element" of aggravated robbery through cross-examination. He provides no citation to the record to support this

11

> conclusory statement or otherwise explain how he raised
> evidence affirmatively showing that although he
> intentionally or knowingly appropriated property from
> Trejo, he did not use a deadly weapon. Trejo testified
> that the man who robbed her was holding a gun and
> pressed it up against her back before forcing her to
> her knees. There was no evidence that [petitioner]
> robbed Trejo, but that he did not use or exhibit a
> deadly weapon. Indeed, [petitioner]'s argument actually
> focuses on his contention that no evidence showed he
> was the man who robbed Trejo at gunpoint, which
> actually is an assertion that he was not guilty of
> anything. Such a contention does not establish his
> entitlement to a lesser-included instruction. Thus, a
> rational jury could not have found [petitioner] guilty
> only of theft, and the trial court did not err by
> refusing [petitioner]'s requested instruction.

(Mem. Op. 10-12.)

In a non-capital state court criminal trial, the question whether an offense is a lesser included offense of another offense, and accordingly whether the defendant is entitled to a jury instruction on the lesser included offense, is a matter of state law and does not raise a federal constitutional issue. *See Creel v. Johnson,* 162 F.3d 385, 390-91 (5th Cir. 1998). Absent a violation of the Constitution, this court must defer to the state court's interpretation of its law for whether a lesser-included-offense instruction is warranted. *See Valles v. Lynaugh,* 835 F.2d 126, 128 (5th Cir. 1985). Petitioner is not entitled to habeas relief under his second ground.

For the reasons discussed herein,

The court ORDERS the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby,

denied. Pursuant to Rule 22(b) of the Federal Rules of Appellate Procedure, Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court, and 28 U.S.C. § 2253(c), for the reasons discussed herein, the court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a constitutional right.

SIGNED April 1, 2019.

JOHN McBRYDE
UNITED STATES DISTRICT JUDGE